**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Southern District of Texas**
(State)

Case number *(if known)*: _____   Chapter ___11___

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | |
|---|---|
| 1. **Debtor's Name** | **Venator Materials PLC** |
| 2. **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | **N/A** |
| 3. **Debtor's federal Employer Identification Number** (EIN) | **N/A** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **Hanzard Drive, Titanium House** | |
| Number          Street | Number          Street |
| **Stockton on Tees** | P.O. Box |
| **Wynyard Park, TS22 5FD, United Kingdom** | |
| City          State     Zip Code | City          State     Zip Code |
| | **Location of principal assets, if different from principal place of business** |
| | Number          Street |
| County | |
| | City          State     Zip Code |

5. **Debtor's website** (URL)          https://www.venatorcorp.com

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

| Debtor | **Venator Materials PLC** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**2819**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub- box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, and it chooses to proceed under Subchapter V of Chapter 11. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☒ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☒ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes.

| | District | When | | Case number | |
|---|---|---|---|---|---|
| | _____ | | MM/DD/YYYY | _____ | |
| | District | When | | Case number | |
| | _____ | | MM/DD/YYYY | _____ | |

| Debtor | **Venator Materials PLC** | Case number *(if known)* | |
|--------|---------------------------|--------------------------|--|
| | Name | | |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
☒ Yes.

List all cases.  If more than 1, attach a separate list.

| | | | |
|--|--|--|--|
| Debtor | **See Rider 1** | Relationship | **Affiliate** |
| District | **Southern District of Texas** | When | **05/14/2023** |
| | | | MM / DD / YYYY |
| Case number, if known | | | |

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes.  Answer below for each property that needs immediate attention.  Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**

_____
Number          Street

_____
City                              State        Zip Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency _____

Contact name _____

Phone _____

---

| **Statistical and administrative information** |
|---|

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors (on a consolidated basis)**

| | | | | | |
|--|--|--|--|--|--|
| ☐ | 1-49 | ☐ | 1,000-5,000 | ☐ | 25,001-50,000 |
| ☐ | 50-99 | ☒ | 5,001-10,000 | ☐ | 50,001-100,000 |
| ☐ | 100-199 | ☐ | 10,001-25,000 | ☐ | More than 100,000 |
| ☐ | 200-999 | | | | |

Debtor   **Venator Materials PLC**                                    Case number *(if known)* _____
         Name

| | | | | | |
|---|---|---|---|---|---|
| **15. Estimated assets (on a consolidated basis)** | ☐ | $0–$50,000 | ☐ | $1,000,001–$10 million | ☐ $500,000,001–$1 billion |
| | ☐ | $50,001–$100,000 | ☐ | $10,000,001–$50 million | ☒ $1,000,000,001–$10 billion |
| | ☐ | $100,001–$500,000 | ☐ | $50,000,001–$100 million | ☐ $10,000,000,001–$50 billion |
| | ☐ | $500,001–$1 million | ☐ | $100,000,001–$500 million | ☐ More than $50 billion |
| **16. Estimated liabilities (on a consolidated basis)** | ☐ | $0–$50,000 | ☐ | $1,000,001–$10 million | ☐ $500,000,001–$1 billion |
| | ☐ | $50,001–$100,000 | ☐ | $10,000,001–$50 million | ☒ $1,000,000,001–$10 billion |
| | ☐ | $100,001–$500,000 | ☐ | $50,000,001–$100 million | ☐ $10,000,000,001–$50 billion |
| | ☐ | $500,001–$1 million | ☐ | $100,000,001–$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --**   Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   __**05/14/2023**__
              MM/ DD / YYYY

✗   __*/s/ Kurt Ogden*__                                    __**Kurt Ogden**__
    Signature of authorized representative of debtor          Printed name

Title   __**Authorized Signatory**__

**18. Signature of attorney**   ✗   __*/s/ Matthew D. Cavenaugh*__          Date   __**05/14/2023**__
                                    Signature of attorney for debtor              MM/DD/YYYY

__**Matthew D. Cavenaugh**__
Printed name

__**Jackson Walker LLP**__
Firm name

__**1401 McKinney Street, Suite 1900**__
Number                    Street

__**Houston**__                                    __**Texas**__          __**77010**__
City                                               State          ZIP Code

__**(713) 752-4200**__                             __**mcavenaugh@jw.com**__
Contact phone                                      Email address

__**24062656**__                                   __**Texas**__
Bar number                                         State

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          page 4

Official Form 201A (12/15)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VENATOR MATERIALS PLC, | ) Case No. 23-[_____] (___) |
| | ) |
| Debtor. | ) |
| | ) |

### Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11

    1.   If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is _____

    2.   The following financial data is the latest available information and refers to the debtor's condition on _____

    (a)   Total assets         $   **$1,416,199,283**

    (b)   Total debts (including debts listed in 2.c, below)     $   **$1,533,063,723**

    (c)   Debt securities held by more than 500 holders

|  |  |  |  |  | Approximate number of holders: |
|---|---|---|---|---|---|
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | | _____ |

    (d)   Number of shares of preferred stock     _____

    (e)   Number of shares of common stock     **108,791,900**

    Comments, if any: _____

    3.   Brief description of debtor's business:   **Chemical Manufacturing**

    4.   List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor:
**SK Praetorian Holdings, L.P.; J&T MS 1 SICAV a.s.; Huntsman Corporation; Dr. Barry B. Siadat**

<table>
<tr><td><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

| United States Bankruptcy Court for the: |
| **Southern District of Texas** |
| (State) |
| Case number *(if known)*: _____     Chapter ___11___ |

☐ Check if this is an
amended filing

<u>**Rider 1**</u>
<u>**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**</u>

On the date hereof, each of the entities listed below (collectively, the "<u>Debtors</u>") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code.  The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Venator Materials PLC.

Venator Materials PLC
Venator Americas Holdings LLC
Venator Chemicals France SAS
Venator Chemicals LLC
Venator Finance S.à r.l.
Venator France SAS
Venator Germany GmbH
Venator Group
Venator Group Canada Inc.
Venator Group Services Limited
Venator Holdings Germany GmbH
Venator International France SAS
Venator International Holdings UK Limited
Venator Investments Ltd
Venator Investments UK Limited
Venator Materials International UK Limited
Venator Materials UK Limited
Venator Materials LLC
Venator P&A Finland Oy
Venator P&A Holdings UK Limited
Venator P&A Spain S.L.U.
Venator Pigments France SAS
Venator Uerdingen GmbH
Venator Wasserchemie Holding GmbH

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| VENATOR MATERIALS PLC, | Case No. 23-[_____] (___) |
| Debtor. | |

**LIST OF EQUITY SECURITY HOLDERS[1]**

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| SK Praetorian Holdings, L.P. | 430 Park Ave., 18TH FL<br>New York, NY 10022 | 39.3% |
| J&T MS 1 SICAV a.s. | C/O Martin Seyček<br>Sokolovská, Prague 8<br>Czech Republic | 14.3% |
| Huntsman Corp. | 10003 Woodloch Forrest Dr.<br>The Woodlands, TX 77380 | 9.0% |

---

[1]   This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VENATOR MATERIALS PLC, | ) | Case No. 23-[_____] (___) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| SK Praetorian Holdings, L.P. | 39.3% |
| J&T MS 1 SICAV a.s. | 14.3% |

Fill in this information to identify the case and this filing:

Debtor Name        **Venator Materials PLC**

United States Bankruptcy Court for the:        **Southern District of Texas**

                                                                                              (State)

Case number (If known):

<u>Official Form 202</u>
# Declaration Under Penalty of Perjury for Non-Individual Debtors        12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐ *Schedule H: Codebtors (Official Form 206H)*

☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐ Amended Schedule

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒ Other document that requires a declaration **List of Equity Security Holders, Corporate Ownership Statement, and Certification of Creditor Matrix**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    <u>05/14/2023</u>          ☒ */s/ Kurt Ogden*
                        MM/ DD/YYYY          Signature of individual signing on behalf of debtor

                                                      **Kurt Ogden**
                                                      Printed name

                                                      **Authorized Signatory**
                                                      Position or relationship to debtor

**Official Form 202**                **Declaration Under Penalty of Perjury for Non-Individual Debtors**

**MINUTES OF THE MEETING
OF
THE BOARD OF DIRECTORS
OF**

**VENATOR MATERIALS PLC**

**May 13, 2023**

A meeting of the Board of Directors (the "***Board***") of Venator Materials PLC (the "***Company***") was held virtually on May 13, 2023. The meeting commenced at approximately 6:00 p.m., British Summer Time ("***BST***").

The following Directors participated in the meeting:

> Stefan Selig, Chairman
> Aaron Davenport
> Jame Donath
> Daniele Ferrari
> Peter Huntsman
> Heike van de Kerkhof
> Vir Lakshman
> Dr. Barry Siadat
> Simon Turner

The following persons also participated in the meeting:

> Kurt Ogden, Executive Vice President and Chief Financial Officer
> Russ Stolle, Executive Vice President and General Counsel
> Sean Pettey, Associate General Counsel, Corporate
> David Faris, Moelis & Company
> Charles Noel-Johnson, Moelis & Company
> Stephen Aulsebrook, Moelis & Company
> Rahul Katoria, Moelis & Company
> Akshat Mathur, Moelis & Company
> Stef Leers, Moelis & Company
> Jamal Zul, Moelis & Company
> Mia Wang, Moelis & Company
> Christian Khoueiri, Moelis & Company
> Kon Asimacopoulos, Kirkland & Ellis LLP
> Hannah Crawford, Kirkland & Ellis LLP
> Steven Serajeddini; Kirkland & Ellis LLP
> Patrick Campbell; Kirkland & Ellis LLP
> Jeff Michalik; Kirkland & Ellis LLP
> Cindi Giglio; Katten Muchin Rosenman LLP
> Loredana Miranda, Katten Muchin Rosenman LLP
> Steven Reisman, Katten Muchin Rosenman LLP
> Mark Roitman, Katten Muchin Rosenman LLP
> Klaus Gerber; Alvarez & Marsal
> Bob Rajan; Alvarez & Marsal

Stefan Selig acted as Chairman of the meeting and Sean Pettey recorded the minutes. The Chairman called the meeting to order, noting that a quorum of the Board was present. He welcomed those in attendance and confirmed that Board members had been able to access the materials for the meeting (the "***Board Book***") on the Diligent platform or via the pdf of the same materials that had been provided earlier in the day to all Board members.

The Chairman noted that the Board members had reviewed and considered materials presented by the management of the Company and the Company's financial and legal advisers, including, but not limited to, materials regarding the liabilities and obligations of the Company, its liquidity, strategic alternatives available to it and the effect of the foregoing on the Company's business, and has had adequate opportunity to consult such persons regarding the materials presented, obtain additional information and to fully consider each of the strategic alternatives available to the Company.

The Chairman reported that it was proposed that the Company enter into a restructuring transaction or series of transactions whereby the Company and certain other members of the Venator Group would restructure their debt obligations and other liabilities (the "***Restructuring***"), implemented by way of an in-court process under the provisions of chapter 11 ("***Chapter 11***") of title 11 of the United States Code (the "***Bankruptcy Code***").

At the Chairman's request, Steven Serajeddini first gave an update on the status of the current process and negotiations with lenders. He reported that they had been able to reach a pre-packaged deal with the Company's lenders, which would make the restructuring process as quick and seamless as possible compared to other Chapter 11 filing scenarios. Questions were asked and a discussion ensued.

Mr. Serajeddini next explained that the terms of a restructuring support agreement (the "***Restructuring Support Agreement***") have been substantially agreed between Venator, certain Venator Group entities which are obligors under the Venator Group's New York law governed funded debt (the "***Debt***") (including the Company) and certain lenders and/or noteholders of the Debt.

At the Chairman's request, Charles Noel-Johnson explained that the transactions included in the Restructuring Support Agreement are intended to align debt service obligations with projected cash flows, thereby optimising the Venator group's long-term capital structure and liquidity.

Mr. Noel-Johnson then explained that Chapter 11 requires a Company valuation at the time of filing and that Moelis & Company had undertaken a valuation analysis to give an enterprise valuation range of approximately $550 million to $700 million. He noted that the plan value for the Company agreed among the creditor group was $600 million, within the range of Moelis & Company's valuation. He then described the different valuation methodologies Moelis & Company had used. David Faris gave additional commentary regarding the valuations. Questions were asked and a discussion ensued.

At the Chairman's request, Jeff Michalik presented the key terms of the latest draft of the Restructuring Support Agreement.

Mr. Michalik noted that the Restructuring Support Agreement contains provisions that allow the Board to exercise its fiduciary duties, including a "fiduciary flex" to provide that Board members do not need to take actions inconsistent with their fiduciary duties, and a "fiduciary out" allowing the Company to terminate the Restructuring Support Agreement if the Board determines that the transactions under the Restructuring Support Agreement are inconsistent with the Board's fiduciary obligations. Questions were asked and a discussion ensued.

At the Chairman's request, Kurt Ogden and Simon Turner gave an update on the Company's liquidity and financial situation. Mr. Ogden reported that the Company currently had $28 million in cash, of which $15 million was in foreign jurisdictions and considered "trapped cash." Mr. Ogden also reported that many of the Company's financial obligations are in different currencies than the Company's available cash, and with the recent tightening of restrictions under the Company's credit facilities it had become increasingly difficult to move cash into locations where it is required. He reported that it was becoming difficult to meet the Company's ongoing obligations. Simon Turner added that while the Company has seen consistent monthly sales volume increases during 2023, the rate of volume recovery had been slow. He noted actions the Company had taken during the previous months to generate cash, including executing the sale-leaseback transaction, the sale of the iron oxides business and the sale of carbon credits, and expressed that the Company does not have many options left to improve liquidity. Questions were asked and a discussion ensued.

At the Chairman's request, Russ Stolle presented proposed resolutions regarding (i) entry into the Restructuring Support Agreement by the Company and certain of its subsidiaries in the same (or substantially the same) form as the version presented to the Board on or in advance of the date hereof and (ii) the payment of certain fees in connection therewith. The Chairman reported to the Board that the Special Committee of the Board (the "***Special Committee***") had held a meeting prior to the Board meeting during which it had met with advisors and walked through the same materials being presented to the Board. He reported that the Special Committee had passed a resolution recommending that the Board adopt the resolutions being proposed to the Board, including authorizing the entry into the Restructuring Support Agreement as well as the Restructuring. Questions were asked and a discussion ensued.

Upon a motion duly made and seconded, the Board unanimously adopted the following resolution:

**WHEREAS**, the Board has carefully considered the matters set out herein and has formed the opinion that such matters are likely to promote the success of the Company for the benefit of its members as a whole having regard (amongst other matters) to the matters referred to in section 172 of the Companies Act 2006, and that such matters are also in the best interest of the Company's creditors and other parties.

**WHEREAS**, the Board has determined in the exercise of its business judgment that it is advisable and in the best interests of the Company and its stakeholders to enter into the Restructuring.

**WHEREAS**, the Board acknowledges and believes that the Restructuring Support Agreement is procedurally and substantively fair to the Company as contemplated by applicable law and the Company's governing documents, to the extent applicable.

**NOW, THEREFORE, BE IT RESOLVED**, that effective as of the date hereof, the members of the Board or any persons previously authorised and appointed to act as signatory on behalf of the Company in respect of the Restructuring (together with each member of the Board, an "**Authorised Person**"), acting alone or with one or more other Authorised Persons, are hereby authorised and empowered to enter on behalf of the Company into the Restructuring Support Agreement with such changes and in such form as the Authorised Person or Authorised Persons executing the same shall in his or their absolute discretion deem appropriate.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons, acting alone or with one or more other Authorised Persons, are hereby authorised and empowered to enter on behalf of the Company into the Restructuring.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons, acting alone or with one or more other Authorised Persons, are hereby authorised and empowered to take or cause to be taken any and all such other and further action, and to execute (under the common seal of the Company, if appropriate), acknowledge, deliver and file any and all such agreements, certificates, instruments and other documents in furtherance of the Restructuring to which the Company is or will be a party, including, but not limited to, the Restructuring Support Agreement, in substantially the form submitted to the Board, and all agreements and documents contemplated thereby (collectively, the "***Restructuring Documents***"), with such changes, additions and modifications thereto as the Authorised Persons executing the same shall, in their absolute discretion approve, such approval to be conclusively evidenced by such Authorised Person's and/or officer's execution and delivery thereof.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons, acting alone or with one or more other Authorised Persons, are hereby authorised and empowered in the name of, and on behalf of, the Company to take any and all actions to (i) obtain approval by a court of competent jurisdiction or any other regulatory or governmental entity of the Restructuring Documents in connection with the Restructuring and (ii) obtain approval by any court of competent jurisdiction or any other regulatory or governmental entity of any Restructuring.

Mr. Stolle then presented proposed resolutions regarding the proposed Chapter 11 filings by the Company and certain of its subsidiaries which are also obligors under the Debt (the "***Filing Subsidiaries***") respectively. The Chairman explained to the Board that the Special Committee had recommended that the Board approve the Chapter 11 filings to be made by the Company and each of the Filing Subsidiaries. Upon a motion duly made and seconded, the Board unanimously adopted the following resolution:

**WHEREAS**, the Board has carefully considered the matters set out herein and has formed the opinion that such matters are likely to promote the success of the Company for the benefit of its members as a whole having regard (amongst other matters) to the matters referred to in section 172 of the Companies Act 2006, and that such matters are also in the best interest of the Company's creditors and other parties.

**NOW, THEREFORE, BE IT RESOLVED**, that it is desirable and in the best interest of the Company, its stakeholders, its creditors and other parties that the Company file or cause to be filed voluntary petitions for relief (the "***Bankruptcy Petitions***") under the provisions of the Bankruptcy Code and any applicable foreign ancillary proceedings for the Company and any of its subsidiaries; and in accordance with the requirements in the Company's governing documents and applicable law, the Board hereby consents to, authorises and approves, the filing of the Bankruptcy Petitions and the foreign ancillary proceedings, if any;

**FURTHER RESOLVED**, that, effective as of the date hereof, each of the Authorised Persons, officers of the Company and/or any persons to whom such Authorised Persons and/or officers delegate certain responsibilities, be, and are hereby authorised to execute (under the common seal of the Company, if appropriate) and file, on behalf of the Company and its subsidiaries, all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of the Company's or any of its subsidiary's businesses.

Mr. Stolle then presented proposed resolutions regarding the retention of Kirkland & Ellis as general bankruptcy counsel, Jackson Walker LLP as co-bankruptcy counsel, Moelis & Company as financial adviser, Alvarez & Marsal as restructuring adviser, Epiq Corporate Restructuring LLP as notice and claims agent and other advisers to the Company and its subsidiaries. The Chairman explained to the Board that the Special Committee had recommended that the Board approve each of the adviser appointments. Upon a motion duly made and seconded, the Board unanimously adopted the following resolution:

**WHEREAS**, the Board has carefully considered the matters set out herein and has formed the opinion that such matters are likely to promote the success of the Company for the benefit of its members as a whole having regard (amongst other matters) to the matters referred to in section 172 of the Companies Act 2006.

**NOW, THEREFORE, BE IT RESOLVED**, that, effective as of the date hereof, each of the Authorised Persons be, and each of them individually hereby is, authorised, empowered and directed to employ (i) the law firm of Kirkland & Ellis as general bankruptcy counsel, (ii) the law firm of Jackson Walker LLP as co-bankruptcy counsel, (iii) Moelis & Company as financial adviser, (iv) Alvarez & Marsal as restructuring adviser, (v) Epiq Corporate Restructuring LLP as notice and claims agent, and (vi) any other legal counsel, accountants, financial advisers, restructuring advisers or other professionals the Board or an Authorised Person deems necessary, appropriate or advisable (the "***Advisers***"); each to represent and assist the Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, the Authorised Persons be, and are hereby authorised, empowered and directed, in accordance with the terms and conditions hereof, to execute (under the common seal of the Company, if appropriate) appropriate retention agreements, pay appropriate retainers and to cause to be filed appropriate applications for authority to retain such services.

**FURTHER RESOLVED**, that, effective as of the date hereof, each of the Authorised Persons, be, and each of them individually hereby is, authorised, empowered and directed to execute (under the common seal of the Company, if appropriate) and file all petitions, schedules, motions, lists, applications, pleadings and other papers, and to perform such further actions and execute (under the common seal of the Company, if appropriate) such further documentation the Authorised Persons in their absolute discretion deem necessary, appropriate or desirable in accordance with these resolutions.

Mr. Stolle then presented proposed resolutions regarding the use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code), the provision of adequate protection to certain Prepetition Secured Lenders (defined below) in accordance with section 363(a) of the Bankruptcy Code and the terms of the DIP Facility (defined below). The Chairman explained to the Board that the Special Committee had recommended that the Board approve the use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code), the provision of adequate protection to certain Prepetition Secured Lenders (defined below) in accordance with section 363(a) of the Bankruptcy Code and the terms of the DIP Facility (defined below). Upon a motion duly made and seconded, the Board unanimously adopted the following resolution:

**WHEREAS**, the Board has carefully considered the matters set out herein and has formed the opinion that such matters are likely to promote the success of the Company for the benefit of its members as a whole having regard (amongst other matters) to the matters referred to in section 172 of the Companies Act 2006.

**WHEREAS**, in the business judgment of each member of the Board, it is desirable and in the best interest of the Company, its stakeholders, its

creditors, and other parties, to obtain the benefits from (i) the use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) ("***Cash Collateral***"), which is security for certain of the Company's prepetition secured lenders (the "***Prepetition Secured Lenders***") under certain credit facilities by and among the Company, the guarantors party thereto and the lenders party thereto and (ii) the incurrence of debtor-in-possession financing obligations ("***DIP Financing***") by entering into a superpriority senior secured debtor in possession term loan facility (the "***DIP Facility***") consistent with the terms and conditions set forth in the DIP Term Sheet (as defined in the Restructuring Support Agreement) (the administrative agent and collateral agent under the DIP Facility, the "***DIP Agent***").

**WHEREAS**, the Board acknowledges and understands that the Company will obtain benefits from the incurrence of the borrowings under the DIP Facility and the other obligations under the DIP Facility and the other DIP Facility Documents which are necessary and convenient to the conduct, promotion and attainment of the business of the Company.

**WHEREAS**, the Board acknowledges and understands that in order to use and obtain the benefits of DIP Financing and the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, the Company will provide certain adequate protection to the Prepetition Secured Lenders (the "***Adequate Protection Obligations***") as documented in proposed interim and final orders (collectively, the "***Financing Orders***") to be submitted for approval of the Bankruptcy Court, and, to the extent that the Company is required to obtain consent from the Prepetition Secured Lenders to enter into any of the DIP Facility Documents, as defined herein, such consent has been (or will be) obtained from the Prepetition Secured Lenders.

**WHEREAS**, in the business judgment of the Board, the form, terms, and provisions of the DIP Facility, substantially in the form submitted to the Board, and such other agreements, certificates, instruments, receipts, petitions, motions or other papers or documents required to consummate the transaction considered by the Financing Orders (collectively, the "***DIP Facility Documents***"), and the Company's execution, delivery and performance of its obligations under the DIP Facility Documents, including without limitation the grant of security interests under the DIP Facility Documents, and any borrowings or guaranty therewith, be, and hereby are, in all respects, authorised and approved.

**NOW, THEREFORE, BE IT RESOLVED**, that effective as of the date hereof, the Company shall be, and hereby is, authorised to enter into the DIP Facility Documents and incur the obligations thereunder (the "***DIP Obligations***"), including the borrowing of the loans under the DIP Facility, and other obligations related to the DIP Financing and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Facility Documents, including granting liens on and security interests in its assets, including the Collateral (as defined

in the DIP Facility Documents), to the DIP Agent, and each of the Authorised Persons be, and hereby are, authorised, empowered, and directed in the name of, and on behalf of, the Company to execute, deliver and perform all of the obligations and the transactions contemplated under each of the DIP Facility Documents in the name and on behalf of the Company, with such changes, additions, and modifications thereto as such Authorised Person shall approve, with such approval to be conclusively evidenced by such Authorised Person's execution and delivery thereof.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons be, and hereby is, authorised, in the name and on behalf of the Company, to take all further actions, or cause all such further actions to be taken and to execute and deliver all such further agreements, documents, instruments, certificates recordings and filings, in the name and on behalf of the Company, as in the determination of such Authorised Person shall be necessary, proper or advisable in order to fully carry out the intent and accomplish the purposes of the foregoing resolutions and to consummate the transactions contemplated thereby, such authority to be conclusively evidenced by the execution of any document or the taking of any such action by such Authorised Person.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons be, and hereby is, authorised, in the name and on behalf of the Company, to enter into any guarantees as described or contemplated by the DIP Facility Documents or any other documents, certificates, instruments, agreements, intercreditor agreements, any extension amendment, any incremental agreement or any other amendment required to consummate the transactions contemplated by the DIP Facility Documents and perform its obligations thereunder and to guarantee the payment and performance of the DIP Obligations of the Company and any other guarantor thereunder.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons be, and hereby is, authorised, empowered, and directed in the name of, and on behalf of, the Company to incur the DIP Obligations and to approve the use of the Cash Collateral pursuant to the Financing Orders, and any Authorised Person be, and hereby is, authorised, empowered and directed to negotiate, execute and deliver any and all agreements, instruments or documents, by or on behalf of the Company, necessary to implement the postpetition financing, including the Adequate Protection Obligations to the Prepetition Secured Lenders in accordance with section 363 of the Bankruptcy Code, as well as any additional or further agreements for entry into the DIP Facility Documents and the use of Cash Collateral in connection with the Chapter 11 case, which agreements may require the Company to grant adequate protection and liens to the Prepetition Secured Lenders and each other agreement, instrument or document to be executed and delivered in connection therewith, by or on behalf of the Company pursuant thereto or in connection therewith, all with such changes therein and additions thereto

as any Authorised Person approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons be, and hereby is, authorised, empowered and directed in the name of, and on behalf of, the Company to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform and cause the performance of, each of the transactions contemplated by the DIP Facility Documents and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or required documents to which the Company is or will be party or any order entered into in connection with the Chapter 11 case (together with the DIP Facility Documents and the Financing Orders, collectively, the "**Financing Documents**") and to incur and pay or cause to be paid all related fees and expenses, with such changes, additions and modifications thereto as an Authorised Person executing the same shall approve.

**FURTHER RESOLVED**, that effective as of the date hereof, the Company, as a debtor and debtor-in-possession under the Bankruptcy Code shall be, and hereby is, authorised, empowered and directed to incur any and all obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the Financing Documents, including granting liens on its assets to secure such obligations.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons be, and hereby is, authorised, empowered and directed in the name of, and on behalf of, the Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions and extensions of the postpetition financing or any of the Financing Documents or to do such other things which shall in his or her sole business judgment be necessary, desirable, proper or advisable in order to perform the DIP Obligations and to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by his or her or their execution thereof.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons be, and hereby is, authorised, empowered and directed in the name of, and on behalf of, the Company, as debtors and debtors in possession, to file or to authorise the DIP Agent to file any Uniform Commercial Code (the "**UCC**") financing statements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name of the Company that the DIP Agent deems necessary or appropriate to perfect any lien or security interest granted under the Financing Orders, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, and to execute and deliver, and

to record or authorise the recording of, such mortgages and deeds of trust in respect of real property of the Companies and such other filings in respect of intellectual and other property of the Companies, in each case as the DIP Agent may reasonably request to perfect the security interests of the DIP Agent under the Financing Orders.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons is hereby authorised, empowered and directed in the name of, and on behalf of, the Company, as debtors and debtors in possession, to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the DIP Facility and all fees and expenses incurred by or on behalf of the Company in connection with the foregoing resolutions, in accordance with the terms of the DIP Facility Documents, which shall in their sole judgment be necessary, proper or advisable to perform any of the Company's obligations under or in connection with the Financing Orders or any of the other DIP Facility Documents and the transactions contemplated therein and to fully carry out the intent of the foregoing resolutions.

**FURTHER RESOLVED**, that effective as of the date hereof, each of the Authorised Persons is hereby authorised in the name of, and on behalf of, the Company, to (a) prepare any amendments, waivers, consents, supplements or other modifications under the DIP Facility Documents and/or all other agreements, instruments, documents, notices and certificates constituting exhibits to or that may be required, necessary, appropriate, desirable or advisable to be executed and delivered pursuant to the DIP Facility Documents or otherwise permitted thereunder or related thereto (each an "***Additional DIP Facility Document***") to which the Company is a party as may be necessary, convenient, advisable, desirable or appropriate at any time from time to time, which amendments, waivers, consents or supplements may provide for modifications or relief under such agreements or documents and may require consent payments, fees or other amounts payable in connection therewith, and (b) execute and deliver such amendments, waivers, consents, supplements or other modifications under such agreements or documents as such Authorised Person shall deem to be necessary, convenient, advisable, desirable or appropriate, such execution and delivery by such Authorised Person to be conclusive evidence of his or her determination and approval of the necessity, appropriateness or advisability thereof.

**FURTHER RESOLVED**, that the Board acknowledges and approves that (a) the signature of any Authorised Person to each DIP Facility Document, and each Additional DIP Facility Document and any amendments, waivers, consents, supplements or other modifications to which the Company is a party shall be conclusive evidence of the authority of Authorised Person to execute and deliver such documents and (b) any person dealing with any Authorised Person in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorised Person and by his or her execution of any document or agreement, and

the same shall be valid and binding obligations of the Company enforceable in accordance with its terms.

Mr. Stolle then presented a proposed resolution regarding further actions and prior actions. Upon a motion duly made and seconded, the Board unanimously adopted the following resolution:

**WHEREAS**, the Board has carefully considered the matters set out herein and has formed the opinion that such matters are likely to promote the success of the Company for the benefit of its members as a whole having regard (amongst other matters) to the matters referred to in section 172 of the Companies Act 2006.

**NOW, THEREFORE, BE IT RESOLVED**, that, effective as of the date hereof, the Company is hereby authorised to authorise (and the Company hereby authorises) any direct or indirect subsidiary of the Company or any entity of which the Company or any subsidiary of such Company is the sole member, general partner, managing member, or equivalent manager, as applicable, to take each of the actions described in these resolutions or any of the actions authorised in these resolutions, and none of the resolutions contained herein, or action taken in furtherance hereto, shall have or cause an adverse effect on any such subsidiary or the Company's interest therein (including without limitation, any automatic dissolution, divestiture, dissociation, or like event under applicable law).

**FURTHER RESOLVED**, that, effective as of the date hereof, in addition to the specific authorisations heretofore conferred upon the Authorised Persons, the Authorised Persons, either individually or as otherwise required by the Company's governing documents and applicable law, be, and each of them hereby is, authorised to execute (under hand or under the common seal of the Company if appropriate), acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of the Company relating to the Restructuring.

**FURTHER RESOLVED**, that, effective as of the date hereof, each of the Authorised Persons (and their designees and delegates) be, and hereby is, authorised and empowered, in the name of and on behalf of the Company, to take or cause to be taken any all such other and further action and to execute (under the common seal of the Company, if appropriate), acknowledge, deliver and file any and all such agreements, certificates, instruments and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorised Person's or Authorised Persons' absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolution adopted herein.

**FURTHER RESOLVED**, that each member of the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the

governing documents of the Company, or hereby waives any right to have received such notice.

**FURTHER RESOLVED**, that, effective as of the date hereof, all acts, actions and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, confirmed and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorised in advance by resolution of the Board.

**FURTHER RESOLVED**, that, effective as of the date hereof, any Authorised Person is hereby authorised to do all such other acts, deeds and other things as the Company itself may lawfully do, in accordance with its governing documents and applicable law, howsoever arising in connection with the matters above, or in furtherance of the intentions expressed in the foregoing resolutions, including, but not limited to, the negotiation, finalisation, execution (under hand or common seal, whether or not expressed to be a deed, as may be necessary or appropriate) and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents whatsoever as the individual acting may in his/her absolute and unfettered discretion approve, deem or determine necessary, appropriate or advisable, such approval, deeming or determination to be conclusively evidenced by said individual taking such action or the execution thereof.

**FURTHER RESOLVED**, that effective as of the date hereof, the Board authorises each of the Advisers to perform all acts in furtherance of the resolutions approved herein.

There being no further matters on the agenda, the Chairman then asked whether there was any further business to be brought before the meeting. There being no further business, he thanked management and other attendees for their participation.

.......................................... .................

Stefan Selig
Chairman